**John M. SHUTTS, Plaintiff,**

v.

**FIRST UNUM LIFE INSURANCE COMPANY OF AMERICA and Unumprovident Corporation, Defendants.**

**No. 1:01–CV–1993(FJS/DRH).**

United States District Court, N.D. New York.

March 24, 2004.

Flink, Smith & Associates, LLC (Jay A. Smith, Esq., of Counsel), Latham, NY, for Plaintiff.

McNamee, Lochner, Titus & Williams, P.C. (Michael J. Hall, Esq., Of Counsel), Albany, NY, for Defendants.

## MEMORANDUM -DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Plaintiff John M. Shutts commenced this declaratory judgment action on October 30, 2001, seeking a declaration from this Court, pursuant to 28 U.S.C. §§ 2201–2202, that he is entitled to long-term disability benefits pursuant to the provisions of the policy that Defendants First UNUM Life Insurance Company of America and Unumprovident Corporation (hereinafter collectively referred to as "Defendant" or "First UNUM") issued to him. Presently before the Court are Defendant's motion

for judgment on the administrative record and Plaintiff's cross-motion for judgment on the administrative record.[1]

## II. BACKGROUND

During 1999, Plaintiff was employed as President of the John I. Shutts Agency, Inc. Defendant issued long-term disability and group health insurance policies to Plaintiff's employer, the John I. Shutts Agency, Inc. The policies are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").[2] The policy's effective date was October 1, 1998.

Plaintiff suffers from organic brain syndrome.[3] On July 19, 2000, he applied for long-term disability benefits, listing April 1, 1999, as his date of disability.

Defendant, relying upon several pieces of written correspondence and telephone interviews, denied Plaintiff's claim for long-term disability benefits on the ground that Plaintiff was not in active employment prior to the effective date of his policy and, as a result, Plaintiff's waiting period was never satisfied.[4]

Plaintiff then appealed Defendant's decision on December 5, 2000. Defendant affirmed its prior determination and upheld its denial. At that time, Defendant also alleged that Plaintiff failed to provide timely notice of his alleged disability as the policy required.[5]

After exhausting his administrative remedies, Plaintiff commenced the instant action, seeking a declaration from this Court that he is entitled to long-term disability coverage. Plaintiff bases his claim on vari-

---

1. Although a motion for judgment on the administrative record is not authorized in the Federal Rules of Civil Procedure, courts often treat such motions as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir.2003) (citation omitted). Thus, the Court treats Defendant's motion for judgment on the administrative record and Plaintiff's cross-motion for judgment on the administrative record as motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

2. Plaintiff also states in his complaint that Defendant erroneously determined that Plaintiff was not entitled to life insurance coverage pursuant to the premium waiver provisions of the group health insurance policy issued to him. Employee group health insurance policies implicate ERISA. *See NYS Health Maint. Org. Conference v. Curiale*, 64 F.3d 794, 801 (2d Cir.1995) (citation omitted). However, the parties only address the issue of Plaintiff's entitlement to long-term disability insurance benefits in their respective motions. Therefore, Plaintiff's long-term disability benefits policy (hereinafter referred to as "the policy") is the focus of discussion.

3. Organic brain syndrome is a form of dementia. Its symptoms include, but are not

limited to, memory loss, loss of concentration, depression, anxiety and disorientation. Plaintiff complains of getting lost, an inability to perform daily tasks, i.e., keeping appointments and organizing his day, without support from family and friends, and the symptoms listed above.

4. The policy covers employees who are in active employment after a prescribed waiting period is satisfied, discussed *infra*. Active employment, under the terms of the policy, means that the employee is working for his employer for earnings that are paid regularly and that the employee is performing the material and substantial duties of his regular occupation. Plaintiff must also be working a minimum of twenty hours per week. *See* Affidavit of Michael Hall, sworn to May 22, 2003 ("Hall Aff."), at Exhibit "B" at GLOSSARY-1.

5. The policy requires that notice of a claimed disability should be given within thirty days after the date the disability begins but no later than ninety days. The policy also states, however, that if it is not possible to send proof of loss within ninety days, it must be sent as soon as reasonably possible. *See* "Hall Aff." at Exhibit "B" at LTD–CLM–1.

ous grounds which the Court will address *seriatim*.

## III. DISCUSSION

### A. Initial Matters

■ As a preliminary matter, Plaintiff asserts that Defendant waived any right it may have to dispute the timeliness of Plaintiff's notice of claim by failing to assert late notice as a ground for denying coverage. Plaintiff cites *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 381 (2d Cir.2002), to support his argument and specifically asserts that the policy does not require notice within a thirty- or ninety-day notice period, but, to the contrary, merely encourages the insured to notify the insurer of a claim within those time periods.

Defendant, on the other hand, argues that Plaintiff's failure to file proof of loss in a timely manner precludes his claim for benefits under ERISA. Defendant asserts that under the policy, if Plaintiff was disabled as of April 1, 1999, he was required to give notice within thirty days of that date, i.e., May 1, 1999, or, at the latest, December 1999. Plaintiff did not give notice, however, until July 19, 2000—approximately seven months later.

■ The Second Circuit has held that the doctrine of waiver applies to an ERISA claim. *See Lauder*, 284 F.3d at 381 (citations omitted). However, there is no bright-line rule for determining whether waiver applies in a particular case and a case-specific analysis is required. *See id.* First, it is necessary to determine whether timely notice is a required element of the policy under which the plaintiff seeks reimbursement, since such an element cannot be waived, and seemingly, with respect to the first consideration, "a claim of waiver [can]not be used to expand the policy so that the insured 'extend[s] its coverage to

more than it originally bargained.'" *Id.* (quotation omitted). However, if waiver would not expand the coverage bargained for, then the court must analyze the particular case under a different waiver principle, which is as follows: "[A]n insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense.'" *Id.* at 382 (quotation omitted).

The policy reads:

> We **encourage** you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim **should be sent** within 30 days after the date your disability begins. However, you **must send** UNUM written proof of your claim no later than 90 days after your eliminations period. **If it is not possible to give proof within 90 days, it must be given as soon as is reasonably possible.**

*See* Hall Aff. at Exh. "B" at LTD–CLM–1 (emphasis added).

The policy does not, contrary to Defendant's assertions, *require* that notice be given within thirty days but states that it should be given within that time period. Additionally, although the policy states that notice must be given within ninety days after the insured's elimination period, it leaves an exception open to those who cannot do so. Moreover, failure to timely file proof of loss does not expand the policy so as to extend its coverage to more than originally planned.

With respect to the second consideration, the Court must look to see if the record supports Defendant's contention. The administrative record contains a comment from a UNUM representative, dated

March 9, 2001, stating: "[n]ext steps— Uphold denial on reappeal as not actively employed. (Note—NY not a strict time limit state; consequently will not put in late notice as uphold reason)." *See* Hall Aff. at Exhibit "B." Not only did First Unum intend to uphold its denial of benefits on other grounds and deliberately avoid using failure to timely file as a defense, but its reason for doing so was based upon its opinion that New York was not a "strict time limit state." Defendant's statement appears to show that it indeed intended to waive this defense and uphold its denial on other grounds to ensure that its decision was not overturned on a technical ground from an apparently liberal time-limit state.

Accordingly, applying *Lauder* to the facts of this case, the Court concludes that Defendant has waived its right to dispute the timeliness of Plaintiff's filing of his notice of claim.

## B. Standard of review

■ The court reviews an ERISA plan administrator's decision to deny benefits " 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits.' " *Henar v. First Unum Life Ins. Co.*, No. 02 Civ.

1570, 2002 WL 31098495, *3 (S.D.N.Y. Sept. 19, 2002) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). When the policy gives the plan administrator discretionary authority, the court reviews its eligibility decision under an arbitrary and capricious standard of review except when there exists a conflict of interest with the plan administrator, in which case the *de novo* standard of review applies. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441–42 (2d Cir.1995) (citations omitted); *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir.2000) (citations omitted); *Rosenthal v. First Unum Life Ins. Co.*, No. 00 CIV. 3204, 2002 WL 975627, *5 (S.D.N.Y. May 9, 2002) (citation omitted).[6,7]

■ There is no question that Defendant had discretionary authority to determine Plaintiff's eligibility for benefits and to construe the terms of his policy. The policy states that, "when making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." *See* Hall Aff. at Exhibit "B" at CC. FP–1. Since Defendant clearly has discretionary authority to determine eligibility

---

6. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that the abuse of discretion standard applied to ERISA cases where the plan administrator had discretionary authority to determine eligibility of benefits. *See id.* at 115, 109 S.Ct. 948. The Second Circuit has since rephrased the abuse of discretion standard as an *arbitrary and capricious* standard. *See Pagan*, 52 F.3d at 441 (emphasis added).

7. In cases in which the plaintiff is able to demonstrate that the defendant has a conflict of interest, there is an additional step to the arbitrary and capricious standard of review. In those situations, "the test for determining

whether the administrator's interpretation of the plan is arbitrary and capricious" is twofold. *Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1255 (2d Cir.1996).

First, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; second, whether the evidence shows that the administrator was in fact influenced by such conflict. If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan *de novo*.

*Id.* at 1255–56.

and to construe the terms of the policy, the Court must next determine whether Defendant was operating under a conflict of interest and, if so, whether Defendant was actually influenced by such a conflict.

Plaintiff argues that Defendant's failure to properly investigate the claim was intentional and that its subsequent denial of the claim, notwithstanding the evidence of eligibility, sufficiently shows that Defendant was influenced by a conflict of interest.

Alternatively, Plaintiff asks the Court to review his claims under a heightened standard of review, even if it does not find that a conflict of interest existed.[8] In response, Defendant argues that not only does Plaintiff fail to identify any conflict of interest it may have but also alleges that Plaintiff cannot establish that a conflict of interest impacted Defendant's decision to deny him benefits.

Plaintiff provides no evidentiary support for his assertion that Defendant's alleged conflict of interest, in fact, affected its decision to deny him benefits. Plaintiff merely makes conclusory allegations with regard to this issue. Such allegations are insufficient as a matter of law to warrant *de novo* review. *See Pulvers*, 210 F.3d at 92. Moreover, Plaintiff's proposal to apply a heightened degree of scrutiny is also without merit. For example, Plaintiff cites *Shelden v. Barre Belt Granite Employer Union Pension Fund*, 25 F.3d 74 (2d Cir. 1994), for the proposition that a heightened degree of scrutiny is applicable when a defendant is a fiduciary and disregards policy rules. However, *Shelden* states that

the arbitrary and capricious standard may be satisfied when a defendant has fiduciary status and ignores policy requirements. *See id.* at 80. Thus, Plaintiff's cases support the application of an arbitrary and capricious standard of review and not, as Plaintiff claims, a heightened degree of scrutiny. The Court, therefore, reviews Plaintiff's claims under an arbitrary and capricious standard of review.

In the present case, Plaintiff claims that Defendant acted arbitrarily and capriciously by failing to properly investigate and conduct a full and fair review of his claims and by misinterpreting and misapplying policy provisions. Additionally, he alleges that the policy provisions upon which Defendant relied are ambiguous.[9]

## C. The policy provisions upon which Defendant relied are not ambiguous

■■ Plaintiff asserts that the policy's "active employment" provision is ambiguous. Specifically, he argues that the phrase "at least twenty hours a week" is not defined. For example, Plaintiff asserts that it is not clear whether the 20–hour minimum is an average, i.e., work ten hours one week and thirty hours the following week. As might be expected, Defendant argues that there is no ambiguity in the twenty-hours-of-work-per-week requirement. Moreover, Defendant states that, in any event, the alleged ambiguity has no effect since the rule of *contra proferentum* does not apply under an arbitrary and capricious review.[10]

■■ "The preliminary question of whether a contract is clear or ambiguous is

---

8. Plaintiff cites *Velez v. Prudential Health Care Plan of N.Y., Inc.*, 943 F.Supp. 332 (S.D.N.Y. 1996), to support his contention that a heightened degree of scrutiny is warranted. *See* Plaintiff's Memorandum of Law at 8. However, the court in *Velez* applied an arbitrary and capricious standard of review.

9. Plaintiff's claim that the policy provisions upon which Defendant relied are ambiguous directly conflicts with his request for declaratory relief. In any event, the Court addresses the merits of his assertion.

10. "The rule of *contra proferentem* is 'that when one party is responsible for the drafting of an instrument, absent evidence indicating

to be decided by the court as a matter of law." *Keiser v. CDC Inv. Mgmt. Corp.,* 160 F.Supp.2d 512, 519 (S.D.N.Y.2001) (citations omitted). "Contract language is unambiguous if it has a 'definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Id.* (quotation and citation omitted). On the other hand, "[l]anguage 'is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement ....'" *Id.* at 519–20 (quotation and citation omitted).

There can be no other rational interpretation of the phrase "at least twenty hours a week" aside from its literal meaning, i.e., that the policyholder must work twenty hours a week. Moreover, Plaintiff's reliance upon *Keiser* to support his position that the term "at least twenty hours a week" is ambiguous is misplaced. In *Keiser*, questions of fact existed regarding the ambiguity of the meaning of the plaintiff's resignation agreement and the meaning of "active employment" as defined by the policy. Although the ambiguity of the term "active employment" was in contention, the court found no ambiguity as to the meaning of "at least thirty hours per week," as was stated in the plaintiff's policy. Thus, the Court finds that the term "at least twenty hours a week" is not ambiguous.[11]

## D. Defendant did not misinterpret or misapply policy provisions [12]

■ Plaintiff asserts that Defendant improperly interpreted the plan and imposed standards not required under the terms of the policy. Specifically, he alleges that Defendant's denial letter demonstrates such inappropriate conduct. Defendant, however, states that Plaintiff has not worked for several years and, therefore, was not in active employment prior to the policy's October 1, 1998 effective date. *See* Plaintiff's Complaint at Exhibit "E." Thus, Defendant asserts that Plaintiff's waiting period was never satisfied. *See id.*

The policy states that the policyholder is eligible for coverage if he is working for his employer in an eligible group and the date he is eligible for coverage is the later of his employer's plan effective date; or the day after he completes his waiting period. *See* Hall Aff. at Exhibit "B" at EMPLOYEE–1.

"Waiting Period" means the continuous period of time ... that you must be in active employment in an eligible group before you are eligible for coverage under a plan." *See* Exhibit "B" at GLOSSARY– 4. The policy defines eligible group(s) as "[a]ll employees of Participating Agencies in the Professional Insurance Agents of New York State, Inc. Trust and employees of the Professional Insurance Agents of New York State, Inc. in active employ-

---

the intention of the parties, any ambiguity will be resolved against the drafter.'" *Pagan,* 52 F.3d at 443 (quotation omitted). Application of the rule is limited, however, to instances where the court reviews an ERISA plan *de novo. See id.* (citation omitted). Thus, this rule is not applicable to the present case.

**11.** Moreover, the Court finds no ambiguity in the remainder of the "active employment" definition or in any other term of the policy.

**12.** "Where the trustees of a plan ... interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *Miles v. N.Y.S. Teamsters Conf. Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 599 (2d Cir.1983) (citations omitted). However, the trial court should not "disregard a pension committee's reasonable interpretation of plan provisions." *Id.*

ment." *See* Exhibit "B" at G–LTD–1. Active employment means that you are working for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation for at least twenty hours per week. *See* Exhibit "B" at GLOSSARY–1.

Although Defendant's explanation is somewhat convoluted, its reasoning is apparent and consistent with the policy's provisions.[13] Furthermore, Plaintiff did not refer this Court to a specific term that was misinterpreted or misapplied in the policy or specific standards that Defendant incorrectly imposed on the plan. Defendant asserts that, in order for Plaintiff to recover under the policy, he had to be in an eligible group, i.e., in active employment, on either the plan's effective date, i.e., October 1, 1998, or the day after Plaintiff completed his waiting period. However, Plaintiff was not in active employment on the policy's effective date or during the waiting period since Defendant found that he had not worked in over three years. Thus, Plaintiff was not in an eligible group and, under the terms of the policy, unable to obtain benefits. Such reasoning does not contravene the terms of the policy, but, to the contrary, is consistent with the definitions set forth in the plan.

### E. Whether the Administrator's decision to deny Plaintiff benefits was arbitrary and capricious [14]

Plaintiff claims that Defendant acted arbitrarily and capriciously by failing to properly investigate his claims and conducted an inadequate and unfair review of his application for benefits. Specifically, he alleges that Defendant's November 18, 2000 internal memorandum evidences Defendant's intent to deny Plaintiff's application without conducting an investigation to answer its remaining questions. Defendant's internal memorandum states

> This is certainly an interesting case. Due to the late notice of claim, it certainly has made it difficult to clarify the dol [date of loss], work status and eligibility. The meds indicate the ee [employee] has been having difficulty for years. However, the ap is giving a dol which is within our coverage... The late filing of this claim has prejudiced our ability to properly adjudicate the claim. At this point, it appears we are looking to deny eligibility due to the er stating the ee hasn't worked for years and the lack of info to support eligibility... The late filing has created this issue... Do we deny based upon info received to date? Do we need to further investigate payroll, tax, attendance info? Do we need additional medical involvement? Should we consult legal?

*See* Hall Aff. at Exhibit "B."

Moreover, Plaintiff asserts that Defendant failed to inquire about the material and substantial duties of his employment and the actual number of hours he en-

---

**13.** A review of Defendant's November 20, 2000 and January 3, 2001 denial letters, *see* Plaintiff's Complaint at Exhibits "E"—"F," collectively, describe Defendant's reasoning for the denial.

**14.** ERISA guarantees " 'a *full and fair review* by the appropriate named fiduciary of the decision denying the claim.' " *Tholke v. Unisys Corp.*, No. 01 Civ. 5495, 2002 WL 575650, *3 (S.D.N.Y. Apr. 16, 2002) (citing 29 U.S.C. § 1133(2)). "The fiduciary's failure to pro-

vide a full and fair review can constitute a decision that was arbitrary and capricious." *Id.* (citing *Crocco v. Xerox Corp.*, 137 F.3d 105, 108 (2d Cir.1998)). Moreover, failing to investigate a claim fully and to develop available evidence can be held to be arbitrary and capricious. *See Cutignola v. New York Tel. Co.*, No. 83 Civ.2082, 1984 WL 1324, *4 (S.D.N.Y. Dec. 11, 1984) (quotation and citation omitted).

gaged in those activities. Plaintiff also alleges that Defendant's reliance upon his and Ronni Sisson's statements, which were allegedly inconclusive, at best, was arbitrary and capricious and that such information was insufficient to adequately determine whether Plaintiff was in "active employment" as defined by the policy. Plaintiff also asserts that his Social Security Administration Disability notice and payroll records show that he received full payment for his services at the time that the plan became effective.

As might be expected, Defendant has a different view of the sufficiency of the information it used in arriving at its decision. Defendant contends that its decision to deny Plaintiff long-term disability benefits was not arbitrary and capricious but, instead, was reasonable based upon the information before it. In support of its assertion, Defendant directs the Court's attention to several steps it took to evaluate Plaintiff's claim. First, it reviewed the correspondence provided by Ronni Sisson, Plaintiff's assistant at the John I. Shutts Agency, Inc. The letter stated that Plaintiff struggled and experienced difficulties for a long period of time. Defendant also reviewed letters from Plaintiff, in which he wrote that "in the past year, I doubt that I have worked more than 30% of the time" and that "[s]everal years ago, maybe three, my assistant, Ronnie brought a television into the office so I would have something to do" and "[w]hat I do at work is watch television, play solitaire on my computer, go to the bank, the post office and take pictures of houses the agency insures."

Second, Defendant interviewed Plaintiff by telephone. In that conversation, Plaintiff indicated that he had not worked in three years and that his salary from the John I. Shutts Agency, Inc. was not actual earnings but was the salary that the family-owned company could afford. Defendant also interviewed Ronni Sisson by telephone, at which time she reiterated that Plaintiff had not really worked in over three years.

Defendant determined that, based upon all of the aforementioned correspondence and phone conversations, Plaintiff was not in active employment and, thus, not eligible for long-term disability benefits. For example, Defendant relies on Plaintiff's statement that "if the business was not family owned, I would be unemployed" and his statement that "[i]n the past year, I doubt that I worked more than 30% of the time." *See* Defendant's Memorandum of Law at 4. Defendant also relied upon Ronni Sisson's statements that Defendant played solitaire and watched television while at work. *See id.* at 5, 8. Furthermore, Defendant reiterated that, although payroll records revealed that Plaintiff was being paid at the time the plan became effective, the information provided to Defendant showed that he was not performing the substantial and material duties of his occupation for the minimum twenty hours per week as the policy required.

 The court's review under an arbitrary and capricious standard "is limited to the administrative record," *see Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir.1995), and is "highly deferential to a plan administrator." *Martin v. E.I. DuPont de Nemours & Co.,* 999 F.Supp. 416, 422 (W.D.N.Y.1998). Moreover, when applying this standard a court "may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan,* 52 F.3d at 442 (quotation and citation omitted); *see also O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 112 (2d Cir. 1995) (quotation omitted). "Substantial evidence is 'such evidence that a reasonable mind might accept as adequate to

support the conclusion reached by the [administrator and] ... requires more than a scintilla but less than a preponderance.'" *Short v. UNUM Life Ins. Co. of Am.,* No. Civ. 302CV827, 2003 WL 22937720, *6 (D.Conn. Dec. 3, 2003) (quotation omitted). However, "'where the administrator imposes "a standard not required by the plan's provisions, or interpret[s] the plan in a manner inconsistent with its plain words, or by [his] interpretation render[s] some provisions of the plan superfluous, [his] actions may well be found to be arbitrary and capricious."'" *Sullivan v. LTV Aerospace & Defense Co.,* No. 91–CV–713S, 1993 WL 405495, *5 (W.D.N.Y. Sept. 30, 1993) (quotation omitted). "Likewise, where there is evidence that the administrator, who owes a fiduciary duty to plan beneficiaries, breached a duty of good faith and fair dealing, which is implicit in any ERISA plan, the administrator's interpretation of plan language may be found to be arbitrary and capricious." *Id.* (citation omitted). For example, the court should look at whether the fiduciary failed to obtain and develop all relevant information and consider substantial evidence in rendering its determination to deny benefits. *See Toland v. McCarthy,* 499 F.Supp. 1183, 1190 (D.Mass.1980); *Cutignola,* 1984 WL 1324 at *4 (citations omitted).

In the present case, there is no doubt that Plaintiff was gradually deteriorating in his health and, thus, unable to fulfill all of the duties he once performed as President of the John I. Shutts Agency, Inc. However, the record is incomplete—it fails to detail the duties of President. Although Ms. Sisson stated that Plaintiff watched television and played solitaire, she also stated that Plaintiff went to the bank and photographed insured properties. These activities, although not associated with the work that a President of a large company would perform, could certainly be the every-day, administrative and opera-tional activities that the President of a small company would perform. The record, however, is so incomplete with regard to Defendant's investigation of Plaintiff's "material and substantial duties of his occupation" that the Court cannot determine what duties Plaintiff was required to do in his employment capacity and if he did, indeed, perform such duties. Moreover, the record fails to show whether Plaintiff stopped doing some of the material and substantial duties of his occupation as President or all of his duties as President and if the duties he ceased performing were integral to the execution of his job.

Additionally, the Court is unable to determine if Plaintiff worked "at least 20 hours a week" as required by the policy. Defendant's reliance upon Plaintiff's and Ms. Sisson's comments are inadequate for determining that Plaintiff did not work the required twenty-hour-a-week minimum. Such comments only evidence Plaintiff's increased difficulty and gradual deterioration in performing his employment duties.

Based upon the evidence in the administrative record as it is presently constituted, the Court finds that Defendant failed to investigate and consider a number of relevant factors in arriving at its determination that Plaintiff was not in "active employment," as defined by the terms of the policy. Accordingly, the Court concludes that Defendant's decision to deny Plaintiff long-term disability benefits was arbitrary and capricious.

■ This conclusion, however, does not end the Court's inquiry. Having determined that Defendant is not entitled to summary judgment, the next question is whether the Court should remand the matter back to Defendant for further consideration or whether the Court should find, in the first instance, that Defendant must

provide Plaintiff with benefits. The Second Circuit has stated that

> Because district courts are required to limit their review to the administrative record, it follows that, if upon review a district court concludes that the Trustees' decision was arbitrary and capricious, it **must** remand to the Trustees with instructions to consider additional evidence **unless** no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a "useless formality."

*Miller*, 72 F.3d at 1071 (citation omitted) (emphasis added).

In the instant case, there is additional, relevant evidence which Defendant could use to determine whether Plaintiff is eligible for benefits under the terms of the plan. For example, Defendant could clarify when and how often Plaintiff worked and at what point, if any, he stopped working the minimum twenty hours per week. Additionally, Defendant can inquire what the material and substantial duties of Plaintiff's job are and when, if ever, he ceased performing those duties in their entirety. Such inquiries are critical to the determination of whether Plaintiff was in active employment as defined by the policy, and a determination as to eligibility cannot adequately be made without such information.

Accordingly, the Court remands this matter to Defendant for further investigation of all relevant and necessary information, to consider all relevant evidence and apply the appropriate standards, and to reach a determination as to whether Plaintiff is eligible for long-term disability benefits within the meaning of the plan.

## F. Attorneys' fees

Plaintiff requests an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). Although "ERISA grants district courts

discretion to award reasonable attorneys fee," *Tholke v. Unisys Corp.*, No. 01 Civ. 5495, 2003 WL 22077429, * 2 (S.D.N.Y. Sept. 5, 2003) (citing 29 U.S.C. § 1132(g)(1)) (footnote omitted), it is premature to address the issue at this juncture since the Court must remand the matter to Defendant for further consideration.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for judgment on the administrative record is **DENIED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for judgment on the administrative record is **DENIED**; and the Court further

**ORDERS** that this matter is remanded to Defendant for further investigation of all relevant and necessary information, to consider all relevant evidence and apply the appropriate standards, and to reach a determination as to whether Plaintiff is eligible for long-term benefits within the meaning of the plan; and the Court further

**ORDERS** that Plaintiff is to inform the Court in writing of the result of Defendant's review process, including any appeals, and the effect that result has on the continued viability of this action.

**IT IS SO ORDERED.**